Jay J. Rice, Esq.
Bruce H. Nagel, Esq.
Diane E. Sammons, Esq.
Randee Matloff, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
jrice@nagelrice.com
bnagel@nagelrice.com
dsammons@nagelrice.com
rmatloff@nagelrice.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARI LEVIN on Behalf of Himself and All Other Persons Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC,, a New Jersey Corporation<br><br>        Defendant. | Case No.:<br><br><br><br>CLASS ACTION COMPLAINT AND JURY DEMAND |

Plaintiff Ari Levin, by and through his undersigned counsel, individually and on behalf of all others similarly situated individuals (the "Class"), as defined below, allege the following facts and claims upon personal knowledge and upon information and belief as to all other matters as follows:

I.   IDENTIFICATION OF PARTIES

1.   The parties to this action are (i) Ari Levin ("Levin" or "Plaintiff"), residing in New York, New York and; (ii) Volkswagen Group of America, Inc., ("Volkswagen" or "Defendant")

a corporation of the State of New Jersey, with a principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.   The action is being brought in New Jersey because Volkswagen is incorporated in the State, has automobile dealers located in the state and does substantial business in the State.

## II.   THE NATURE OF THE ACTION

2.    Plaintiffs bring this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities (the "Class" or "Class Members") who own or lease or who have owned or leased a 2009-2015 Volkswagen or Audi diesel-powered vehicle which contained software specifically designed to avoid and cheat EPA test standards.

3.    The United States Government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations. This case arises because Defendant Volkswagen Group of America ("Volkswagen") purposeful and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws. As stated by Cynthia Giles, Assistant

Administrator for the Office of Enforcement and Compliance Assurance at the EPA: -Using a defeat device in cars to evade clean air standards is illegal and a threat to public health." Yet that is exactly what Volkswagen did in its 2009-20015 Volkswagen and Audi diesel vehicles.[1]

4.   As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing stations, but during normal operations emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

5.   NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due

_____

[1] See Sept. 18, 2015 EPA News Release.

to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

6.    The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control system during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

7.    According to the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Vehicles.

8.    Volkswagen has charged a substantial premium for the Vehicles, ironically marketed by Volkswagen as "CleanDiesel." For example, for the 2015 Volkswagen Jetta, the base S model has

4

a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

9.   These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing. The table below sets forth the price premium for each base, mid-level and top-line trim for each model:

CleanDiesel Price Premiums

| Model | Base | Mid-level | Top-line |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

10.  Volkswagen has been ordered by the EPA to recall the Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Vehicles EPA compliant, Class members will

5

nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Vehicle and it will cause owners of Vehicles to pay more for fuel while using their Vehicles.

11. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Vehicles emit 40 times the allowed levels, owners and/or lessees of the Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Vehicles, they would not have purchased or leased those Vehicles, or would have paid substantially less for the Vehicles than they did. Moreover, when and if Volkswagen recalls the Vehicles and degrades the CleanDiesel engine performance in order to make the Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

12. All of the claims asserted herein arise out of Volkswagen's design, manufacture, warranting, advertising and selling of the Vehicle. Upon information and belief, Volkswagen designed, manufactured, warranted, marketed, advertised and sold

the defective Vehicles to thousands of consumers throughout the United States.

13.   Volkswagen knew, at or before the time it sold the first vehicle, that the Vehicle contained a fundamental defect in its emission design.   Volkswagen had sole and exclusive possession of this knowledge.

14.   Notwithstanding this knowledge, Volkswagen made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising, and sale of the Vehicles, which Volkswagen knew to be defective, both at the time of sale and on an ongoing basis.

15.   Volkswagen made uniform written misrepresentations to and/or uniformly concealed from Plaintiff and everyone in the chain of distribution the defect in Plaintiff's Vehicle, and failed to remove Plaintiff's Vehicle from the marketplace or take adequate remedial action.   Instead, Volkswagen sold and serviced Plaintiff's Vehicle even though it knew, or was reckless in not knowing, that the Vehicles were defectively designed, would fail emissions standards, and would ultimately result in Plaintiff's purchase of a vehicle that was less valuable than a Vehicle which would meet standards.

16.   Plaintiff asserts claims on behalf of himself and the Class Members under the California Business and Professions Act, Cal. Bus. & Prof. Code § 17200 *et seq* (the "CBPA") and similar state laws.   Plaintiffs also assert claims on behalf of themselves      and      the      Class      for      fraudulent

concealment/nondisclosure, breach of implied warranties, and misrepresentation under California law and similar state laws.

17. Plaintiff seeks actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class.

### III.  PARTIES

18. Plaintiff Ari Levin ("Levin") is an individual residing in New York, New York. On or about September 5, 2009, plaintiff purchased a new 2010 Jetta TDI, VIN Number 3VWRL7AJ7AMO13824 from Pacific Volkswagen, an auto dealer located in Hawthorne, California.

19. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time he purchased his vehicle, it was equipped with an emissions control  device which caused his vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the cheat software by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Volkswagen knew about and purposefully installed software in his vehicle that suppressed the true emissions of his vehicle and failed to disclose to him the software and its effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and

would retain all of its operating characteristics throughout its useful life.

20. Plaintiff selected and ultimately purchased his vehicle, in part, because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen. Specifically, prior to his purchase of the vehicle, Plaintiff viewed advertisements regarding the CleanDiesel. The advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the defective software or that Volkswagen had purposefully falsified its certification of EPA compliance. Had Volkswagen disclosed that the CleanDiesel in his vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, he would not have purchased his vehicle with the CleanDiesel engine, or would have paid less for the vehicle.

21. Plaintiff has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of his vehicle.

22. Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the

9

"defeat device" and/or defective design of the CleanDiesel engine prior to purchase.

**A.    Defendant**

23.   Volkswagen Group of America. Inc. ("Volkswagen") is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal business address at 600 Sylvan Avenue, Englewood, New Jersey 04631. At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Vehicles under the Volkswagen and Audi brand names throughout the United States. Volkswagen and/or its agents designed, manufactured and installed the CleanDiesel engine systems in the Vehicles, which included the software designed to cheat the state and federal emission standard testing. Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Vehicles.

### IV. TOLLING OF THE STATUTE OF LIMITATIONS

#### A.    Discovery Rule Tolling

24.   Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and software designed to cheat the emission standards. It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part. As reported by the *Los Angeles Times* on September 18, 2015, it took California Air

Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding, its behavior from regulators and consumers. This is the quintessential case for tolling.

25. Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emissions qualities of its vehicles.

26. Plaintiff and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiff only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Volkswagen valued profits over

compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

27. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

### B.  Fraudulent Concealment Tolling

28. All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

23. Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

### C.  Estoppel

29. Volkswagen was under a continuous duty to disclose to Plaintiff and the other Classmembers the true character, quality, and nature of emissions from the vehicles at issue, and

of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

30. Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

31. Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

32. Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## V.  JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), because at least one class member is of diverse citizenship from the Defendant, a corporation incorporated in the State of New Jersey; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

34. The court has personal jurisdiction over the parties because of Volkswagen's many and important contacts with the State of New Jersey.  Defendant has an office and conducts substantial business in New Jersey, has had systematic and

continuous contacts with New Jersey, promotes its products in New Jersey, puts its Vehicles into the stream of commerce in New Jersey and has agents and representatives that can be found in New Jersey.

35. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred out of this District, and Volkswagen's conduct has injured Class Members residing in this District. Volkswagen transacts business and maintains a principal place of business within this District. Accordingly, this court has jurisdiction over this action and venue is proper in this Judicial District.

36. The Federal Courthouse located in Newark, New Jersey is the proper vicinage for this matter because Volkswagen is incorporated in this State.

<u>CLASS ACTION ALLEGATIONS</u>

37. Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

38. The Class which Plaintiff seeks to represent is defined as follows: All persons or entities in the United States who are current or former owners and/or lessees of a diesel vehicle with software designed to avoid EPA and state emissions standards. These vehicles include without limitation: MY 2009-20015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-205 VW Golf; MY 20014-1015 VW Passat and MY 2009-2015 Audi 3.

39.   Excluded from the Class are: (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family; (v) any purchaser of a Vehicle in the State of California who has received a refund for the full purchase price of his/her Vehicle, excluding taxes and installation costs; and (vi) any purchaser of a Vehicle in the State of California who has received a re-designed replacement Vehicle from Volkswagen that operates in conformance with EPA standards.

40.   Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal the Class should be expanded or otherwise modified.

41.   This action has been brought and may properly be maintained as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3), because there is a well-defined community of interest in the litigation in which common issues predominate and the proposed class is easily ascertainable:

a)   Numerosity.  Volkswagen sold and distributed the Vehicles throughout the United States.  Plaintiff is informed and believe that the proposed putative Class is made-up of at least several thousand residents of California.

15

b)  <u>Common Issues Predominate</u>.  Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class. The Vehicles are all the same and do not differ in any manner that is relevant to Plaintiff's allegations, and the damage and harm caused thereby.  Plaintiff alleges herein that the Vehicles all have the same inherent defect (and that they were defective when made, when they left Volkswagen's possession and control, and are presently defective as they are now being used by Plaintiff and Class members). There is a well-defined community of interest in the questions of law and fact involved and that affect consumers who purchased the Vehicles.  These questions of law and fact predominate over questions that affect only individual class members.

The common questions of law and fact include, without limitation:

i)  Whether Volkswagen engaged in the conduct alleged herein;

ii)  Whether  Volkswagen  designed,  advertised, marketed, distributed, leased, sold, or otherwise placed Vehicles into the stream of commerce in the United States;

iii) Whether the CleanDiesel engine system in the Vehicles contains a defect in that it does not comply with US EPA requirements;

iv)  Whether  the  CleanDiesel  engine  systems  in Vehicles can be made to comply with EPA standards without

substantially degrading the performance and/or efficiency of the Vehicles;

v) Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

vi) Whether Volkswagen designed, manufactured, marketed, and distributed Vehicles with a "defeat device";

vii) Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

viii) Whether Plaintiff and the other Class members overpaid for their Vehicles:

ix) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief, and

x) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the questions of law and fact involved and that affect the Class.

c) Typicality. Plaintiff's claims are typical of the claims of the Class members in that Plaintiff and the Class members have the same Vehicles, which share the same design, parts, materials, workmanship and manufacture and about which Defendant repeatedly made the same uniform omissions.

17

Therefore, the claims of Plaintiff are and will be typical of Class members.

d) <u>The Class is Ascertainable</u>.  Plaintiff has adequately and objectively defined the Class, as detailed above, so the Court and Class members will be able to use the definition to determine Class membership.

e) <u>Adequacy</u>.  Plaintiff will fairly and adequately represent the interests of all Class members.  Plaintiff has purchased a defective Vehicle and is an adequate representative of the Class as he have no interest which is adverse to the interests of absent Class members.  Plaintiff has retained counsel with substantial experience and success in the prosecution of complex defective product and consumer protection class action litigation.

f) <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds of individual lawsuits, will benefit the parties and greatly  reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses

18

and burden in conducting the discovery, retention and analysis by specialized experts and presentation of evidence about the inherent defects in the Vehicles, the burden of individual litigation would make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendant and result in the impairment of, and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiff know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

<u>FIRST CAUSE OF ACTION</u>

(Violations of Cal. Bus. & Prof. Code § 17200 *et seq.*

42. Plaintiff repeats and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

43. Defendant has engaged in unfair, unlawful, and fraudulent business acts or practices as set forth above.

44. Plaintiff brings this cause of action on behalf of himself and the California Class, pursuant to California Business and Professions Code, §17200, *et seq.*

45. Defendant's conduct constitutes unfair business acts and/or practices because Defendant's practices have caused and

19

are likely to cause substantial injury to Plaintiff which injury was not reasonably avoidable by Plaintiff in light of Defendant's exclusive knowledge of the evasive and defective software in the Vehicles and is not outweighed by the acts' and practices' benefits, if any, to Plaintiff and Class members. Such conduct is ongoing and continues to this date.

46. The injury to consumers is substantial, particularly because the Vehicles are defective at the time of sale. Plaintiff and Class members paid additional money for Vehicles that were not as represented and they would not otherwise have spent for Vehicles that failed to comply with EPA standards. The Vehicles are worth less than Plaintiff and Class members paid for them given the failures of the vehicles to meet EPA standards. The injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Any purported benefits to consumers from the design of the Vehicles are negated by the defective emissions.

47. The injury to consumers is not an injury that consumers themselves could reasonably have avoided because consumers did not know about the cheat software and the failure of their vehicles to conform to EPA standards.

48. Defendant's acts and practices of intentional selling Vehicles designed to ignore EPA standards offends an established public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

49.   It is unethical and oppressive to charge a premium price for a product that fails in one its essential purpose of producing cleaner emissions that meet EPA standards. Further, as alleged in detail above, Defendant actually knew about the existence of defective emission devices which renders Defendant's conduct particularly deceptive, immoral, unethical, oppressive and unscrupulous.

50.   Defendant's conduct also offends established public policies concerning consumer protection and class action litigation.  California also has established a public policy against allowing manufacturers to escape liability for placing defective consumer products in the stream of commerce by imposing liability on them, and subjecting them to penalties, under the implied warranty of merchantability by operation of law under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*.

51.   Defendant's acts, practices and omissions threaten an incipient violation of antitrust laws and/or consumer protection statutes, or violate the policy and spirit of one of those laws because the effect of the acts and practices are comparable to or the same as a violation of the law or otherwise significantly threaten or harm competition.  Defendant's acts and practices harm competition by luring consumers to buy its Vehicles, instead of the vehicles manufactured and sold by Defendant's competitors.  The free market requires the free flow of information to run effectively.  Defendant's failure to disclose

the material fact that the intentionally defective emissions system impedes the free market.

52. Furthermore, Volkswagen wrongfully gained money by making the sale of Vehicles to Californians, which wrongful gain should be restored to Californians that purchased Defendant's Vehicles.

53. Defendant's acts and practices are unlawful because they violate the Song-Beverly Act, Civil Code §§ 1790 *et seq.*, the Consumer Legal Remedies Act, Civil Code 1750 *et seq.*, Bus. & Prof. Code § 17500, the California Commercial Code, and the Magnuson-Moss Warranty Act ("MMWA").

  i.  Defendant violates Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Second Cause of Action, incorporated hereto by reference.

  ii.  Defendant violates the CLRA, Cal. Civ. §§ 1750 *et seq.*, as alleged throughout this Complaint and the Third cause of action, incorporated by reference hereto.

  iii.  Defendant violates Cal. Civ. Code §§ 1790 *et seq.*, the California Commercial Code, and the MMWA as alleged throughout this Complaint, as incorporated hereto by reference throughout the additional claims.

22

54.  Defendant's acts and practices are fraudulent in that they have deceived and/or are "likely to deceive" Plaintiff and members of the consuming public.  Defendant sold Plaintiff and Class members Vehicles with defective emission systems that have rendered the Vehicles unusable for the purposes for which they were purchased.

55.  Plaintiff and Class Members relied on Defendant's unfair, unlawful, and fraudulent business acts and practices to their detriment in that they would not have purchased the Vehicles had Volkswagen disclosed that the emission systems were defective. As alleged herein, Mr. Levin relied on Defendant's omissions and would not have bought the Vehicle had Volkswagen disclosed that the defective emission system.

56.  Defendant's unfair, unlawful, and fraudulent business acts and practices directly and proximately caused Plaintiff's and Class members' injuries in that but for Defendant's failure to disclose that the Vehicles had defective emission systems, Plaintiff and Class members would have paid less for the Vehicles, would have bought other less-expensive styles or brands of Vehicles, or would not have purchased the Vehicles at all.

57.  Defendant was obliged to disclose the material facts because: a) Defendant had exclusive superior knowledge of the material facts not known to Plaintiff and Class members, since only Defendant had access to the data from its manufacturers, its own research and tests, and  other information it obtained

23

and or recorded; and b) Defendant actively concealed and suppressed the material facts from Plaintiff and Class members by not revealing the defective emission system when it knew would not cure the malfunctioning Vehicles, while representing to consumers either expressly or impliedly that the emission system was compliant; (c) Volkswagen made representations about the Vehicle's "clean" performance while withholding the material fact that the Vehicles were designed with noncompliant emission systems.

58.   Plaintiffs and Class members have suffered injury in fact and have lost money as a result of Defendant's unfair competition in that they have overpaid for the Vehicles and/or by the fact that their Vehicles are worth less than they paid for them because of the defective emission system. Plaintiff and Class members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.*, plus interest, attorneys' fees, and costs.

<u>SECOND CAUSE OF ACTION</u>

(Violations of Cal. Bus. & Prof. Code § 17500 *et seq.*)

59.   Plaintiff repeats and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

60.   Plaintiff brings this cause of action on behalf of himself and the Class pursuant to California Business and Professions Code, §17500, *et seq.*

61.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

62. Defendant falsely advertised the Vehicles by making partial representations about their performance, while omitting the material information that the emission system was defective.

63. Volkswagen's false advertising through omission of material fact has deceived and is "likely to deceive" Plaintiff and Class members.

64. Plaintiff and Class members relied upon Defendant's false advertising to their detriment in that they would not have purchased the Vehicles had Volkswagen disclosed that the emission system was defective.

65. Defendant's false advertising directly and proximately caused Plaintiff's and Class members' injuries in that but for Defendant's failure to disclose that the Vehicles had defective emission systems, Plaintiff and Class members would not have overpaid for the Vehicles, would have bought other less-expensive styles or brands of the Vehicles, or would not have bought the Vehicle at all.

66. Plaintiffs and Class members have suffered injury in fact and have lost money as a result of Defendant's false advertising in that they have overpaid for the Vehicle, and/or by that fact that their Vehicles are worth less than they paid for them because of the defective emission system.

67. Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiff seeks an order 1) requiring Defendant to immediately cease the unlawful, unfair, and or fraudulent business acts and/or practices and false and misleading advertising complained

of herein; 2) enjoining Defendant from continuing to falsely advertise the Vehicles; and 3) requiring Defendant to repair or replace the Vehicle or provide full restitution to Plaintiffs and Class members of their full retail purchase price, plus interest and attorneys' fees.

<u>THIRD CAUSE OF ACTION</u>

(Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*)

68. Plaintiff repeats and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

69. Plaintiff seeks to enjoin Defendant's violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§1750 *et seq.*, as well as damages resulting from Defendant's violations of the CLRA.

70. At all times relevant hereto, Plaintiffs and Class members were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

71. At all times relevant hereto, the Vehicles constituted "goods" as that term is defined in Civ. Code §1761(a).

72. At all times relevant hereto, Defendant constituted a "person" as that term is defined in Civ. Code §1761(c).

73. At all times relevant hereto, Plaintiff's and Class members' purchases of Defendant's Vehicles constituted "transactions" as that term is defined in Civ. Code §1761(e).

74. At all times relevant hereto, Defendant provided "services" to Plaintiff within the meaning of Civil Code §1761(b).

75. The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods ... are of a particular standard, quality or grade . . . if they are of another; ... and (9) Advertising goods ... with intent not to sell them as advertised.

76. Defendant violated Civ. Code § 1770(a) subsection (5), (7), and (9) by representing that Vehicles were specially designed to be "clean" and to at least meet EPA standards, when, in fact, the Vehicles have defective emission systems. The information Defendant concealed and/or did not disclose to Plaintiff and Class members is material in that reasonable consumers expect Vehicles, for which they paid a premium price, to function properly, and thus would have considered the omitted facts important in deciding whether to purchase, or whether to pay the stated price for the Vehicles.

77. Plaintiffs and Class members would have behaved differently by not buying the Vehicles, not paying for repairs,

and/or paying less for the Vehicles, had they been aware that the emission systems were defective.

78.   The omissions of material facts, as alleged above, are contrary to representations actually made by Defendant, including but not limited to, the claim that Volkswagen was providing "clean" vehicles when, in fact, the Vehicles were specifically designed to not meet EPA standards while having the failure specifically designed to go undisclosed to the consumer and the EPA.

79.   Defendant was obliged to disclose the material facts because: a) Defendant had exclusive knowledge of the material facts not known to Plaintiff and Class members, since only Defendant had access to the aggregated collected from data from its manufacturers, designers, and engineers, ,communications with its service personnel, service personnel it authorized to make repairs to the Vehicles, and its own tests; and b) Defendant actively concealed and suppressed the material facts from Plaintiff and Class members by designing the emissions software to deceive and fool the EPA inspection and certification process.

80.   Plaintiff and Class members justifiably acted or relied to their detriment upon the concealment and/or non-disclosure of material facts as evidenced by their purchases of the defective Vehicles.  Had defendant disclosed the material fact that the Vehicles had defective emission systems and deceptive software, Plaintiff and Class members would have

behaved differently by not buying the Vehicles or paying less for them.

81. Defendant's omissions of material facts directly and proximately caused Plaintiff's and Class member's injuries in that Plaintiff and Class members would not have paid the extra premium for the Vehicles or would not have bought the Vehicles at all had Defendant disclosed that the Vehicles would fail EPA standards. As such, Plaintiffs did not receive the benefit of the bargain.

82. Civil Code §1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

83. Civil code §1780(a) subsections (1) and (2) permit a court of competent jurisdiction to award damages and restitution.

84. Pursuant to Civil Code §1782(a), Plaintiffs sent Defendant notices of the particular alleged violations of Civil Code §1770 contemporaneous with the filing of this Complaint and demanded that defendant rectify the actions set forth above by replacing the defective emission system or refunding the purchase price and giving notice to the affected consumers that they intended to do so. This notice was sent to defendant's principal place of business by Certified Mail, Return Receipt Requested. Should Defendant fail to adequately respond to Plaintiff Levin's notice nor comply with the elements of Civil Code §1782(c)(1)-(4) as to Plaintiff Levin's notices after 30

days plaintiffs will amend the complaint to seek actual and punitive damages on behalf of the himself and the class.

As a result of Defendant's violations of the CLRA, Plaintiffs are entitled to an Order (1) enjoining the wrongful practices described above; (2) requiring repairs or replacement of the Vehicles; (3) costs; (4) attorney's fees, and (5) such other relief as the Court deems just permitted by Civil Code § 1780 (a) and (e).

## FIFTH CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability under the Song-Beverly Act, Cal. Civ. Code 1790 *et seq*.)

85. Plaintiffs allege and incorporate the above allegations by reference as if fully set forth herein.

86. Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 *et seq*., every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code § 1791.1(a). Therefore, consumers need not be in privity with the manufacturer to bring an implied warranty claim.

87. The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

88. Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §§ 1791(j).

89. Plaintiffs bought the Vehicles at retail in the State of California.

90. At the time of sale, and currently, Defendant is in the business of manufacturing, marketing, and selling Vehicles.

91. By operation of law, Defendant impliedly warranted to Plaintiffs and Class members that the Vehicles, for which Plaintiffs and Class members paid a premium price, were of merchantable quality and fit for the ordinary purposes for which they are used.

92. Defendant knowingly and/or recklessly sold a defective product without conspicuously informing consumers about the defective emission systems.

93. The Vehicles were inherently defective in that they do not comply with federal and state emission standards, rendering certain safety and emission functions inoperative and thus the CleanDiesel engine system was not adequately designed, manufactured and tested.

94. Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

95. Defendant breached the implied warranty at the time of sale by selling the Vehicles with defective emission systems.

96. Plaintiff's and Class members' Vehicles do not pass without objection in the trade as they are sold as a premium product, but fail to pass state and federal emission standards.

97. Plaintiff's and Class members' Vehicles were not adequately contained, packaged, or labeled because the emissions systems were defective and the Vehicles could not perform properly.

98.   Plaintiff's and Class members were the intended third-party beneficiaries of the contracts for sale of the Vehicles from Volkswagen to the auto dealers who ultimately sold the Vehicles to Plaintiff and Class members.   In the case of Plaintiff Levin, Plaintiff is the intended third party beneficiary of contracts for sale of the Vehicle between the Dealer and Volkswagen.   As for Class members, they are the intended third-party beneficiaries of the contracts for sale of the Vehicles from Volkswagen and Dealers across the State of California.

99.   Defendant knew that the auto dealers to whom it sold the Vehicles were not going to own the Vehicles any longer than it took to sell them to Plaintiff and Class members.   Further, Defendant intended that any warranty, whether express or implied, that applied to the Vehicles were for the benefit of Plaintiff and Class members; who are the people that the auto dealers and Volkswagen intended and knew would own and use the Vehicles for their intended purposes.

100.   Defendant's conduct of responding to warranty claims made by remote purchasers estops it from denying liability under express and implied warranties on the basis of privity. Defendant brought itself into privity with Plaintiff and Class members.

101.   Defendant knew and intended that Plaintiff and Class members were the ultimate beneficiaries of Defendant's implied warranties as they are the owners/lessees of the Vehicles.

102.   Plaintiff and Class members purchased or leased the Vehicles from authorized dealers who are agents of Volkswagen.

103.   Volkswagen knew and intended that its authorized dealers of the Vehicles were not the ultimate consumers of the defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers and users of the Vehicles only.

104.   Defendant, who manufactures and markets the Vehicles, and/or sellers/resellers of the Vehicles, had knowledge that Plaintiff and Class members were the end users of the Vehicles when Defendant entered into any and all sales contracts and subcontracts for the Vehicles with dealers and Defendant's intent to benefit Plaintiff and Class members arises by operation of law pursuant to the implied covenant of good faith and fair dealing contained within any and all sales contracts and subcontracts for the Vehicles entered into by Defendant.

105.   Volkswagen brought itself into privity with Plaintiff and Class members who relied on written labels, representations, and advertisements made by Volkswagen as alleged herein.

106.   As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial. Plaintiffs and Class members are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, and other relief the Court deems appropriate.

### SIXTH CAUSE OF ACTION

(Violations of the Magnuson-Moss Warranty Act
(15 U.S.C. §§ 2301 *et seq.*) – Breach of Express Written
Warranty and Breach of Implied Warranty of Merchantability)

107. Plaintiff repeats and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

108. The Vehicles are "consumer products" as that term is defined under 15 U.S.C. §2301(1).

109. Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Vehicles for personal and household use and not for resale or commercial purposes.

110. Volkswagen is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

110. Volkswagen provided Plaintiff and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

111. Volkswagen provided Plaintiff and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

112. In its capacity as a warrantor, and by the conduct described herein, any attempt by Volkswagen to limit the express warranties in a manner that would exclude coverage for the defective emission systems and any such effort to disclaim or otherwise limit liability for its defective Vehicles is null and void as alleged above.

113. This Court has jurisdiction over this cause of action under 28 U.S.C. 1332.

114. Volkswagen has failed to comply with its obligations under its Written Warranties, Fact Warranties and implied warranties. By failing to repair or replace the Vehicles under the Written Warranties and conform the Vehicles to the Fact Warranties and implied warranties, Volkswagen breached its warranties.

115. Plaintiff fulfilled their obligations under the warranties.

116. As a direct and proximate result of Defendant's breach of express and implied warranties, Plaintiff and Class members have suffered injury in that their Volkswagen are worth less than what they paid for them and Plaintiff and Class members are entitled to damages, equitable relief, attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

SEVENTH CAUSE OF ACTION

(Fraud by Concealment)

117. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

118. This claim is brought on behalf of the Class.

119. Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended:

vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

120. Plaintiff and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Nationwide Class members did not, and could not, unravel Volkswagen's deception on their own.

121. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiff and Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." In the words of Ms. Shah, which no doubt reflect the

sentiments of all other "clean" diesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

122. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false representations were material to consumers, both because they concerned the quality of the vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and Nationwide Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

123. Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme,

and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or Class members. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiff and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

124. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and Class members.

125. On information and belief, Volkswagen has still not made lull and adequate disclosures, and continues to defraud Plaintiff and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

126. Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Class Members actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Class members.

127. Because of the concealment and/or suppression of the facts, Plaintiff and Class members have sustained damage because they own vehicles that are diminished in value as a result of

Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and Nationwide Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

128. The value of Plaintiff's and Nationwide Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

129. Accordingly. Volkswagen is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

130. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment

of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

131. Plaintiff pleads this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiff stands ready to plead sub-classes, based on the residences at pertinent times of members of the Nationwide Class, to allege fraudulent concealment under the laws of states other than Virginia.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant for the following:

1.   An order certifying Plaintiffs' claims as a class action, appointing Ari Levin as representative Plaintiff and appointing their counsel, Nagel Rice, LLP, to be counsel for the Class;

2.   A constructive trust on and restitution of all amounts obtained by Defendant as a result of its violation of the statutory claims plead above, and the Defendant's misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.   All recoverable compensatory, punitive, and other damages sustained by Plaintiff and Class members;

4.    Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

5.    An injunction (1) enjoining Defendant's wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above; (2) directing Defendant to engage in a corrective notice campaign; and (3) directing Defendant to repair or replace the Vehicles or refund to Plaintiff and Class members the funds paid to Defendant for the defective Vehicles;

6.    Statutory pre-judgment and post-judgment interest on any amounts;

7.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.    Such other relief as the Court may deem just and proper

## XI.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action so triable.

By:  /s/ Jay J. Rice
     JAY J. RICE
     Bruce H. Nagel
     Diane E. Sammons
     Randee M. Matloff
     NAGEL RICE, LLP
     103 Eisenhower Parkway
     Roseland, New Jersey 07068
     973-618-0400
     jrice@nagelrice.com
     dsammons@nagelrice.com

Dated:   September 21, 2015

42